## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## WESTERN DIVISION

**EMMERICH NEWSPAPERS, INC. and**                               **PLAINTIFFS**
**HOWARD JONES**
**V.**                                           **CIVIL ACTION NO. 5:24-CV-87-KS-BWR**

**MISSISSIPPI RIVER COMMISSION**                                   **DEFENDANT**

### ORDER

Before the Court is the Motion to Dismiss [18] filed by Defendant Mississippi River Commission ("MRC") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  Plaintiffs Emmerich Newspapers, Inc. ("Emmerich"), and Howard Jones ("Jones") have filed a Response [20], and Defendant has filed a Reply [21].  In short, Plaintiffs allege that Defendant Mississippi River Commission has failed to keep proper records, give adequate notice, and conduct certain meetings in public, contrary to the Government in the Sunshine Act ("Sunshine Act"), 5 U.S.C. § 552b, the Federal Advisory Committee Act ("FACA"), 5 U.S.C. § 1001, *et seq.*, and related regulations.  Having reviewed the parties' submissions, the First Amended Complaint, and the relevant legal authority, and otherwise being duly advised in the premises, the Court finds that the Motion [18] should be granted in part and denied in part.

### I.     PROCEDURAL BACKGROUND

Plaintiffs' original Complaint alleged that, since 2010, Defendant MRC has violated (1) the Sunshine Act,[1] 5 U.S.C. § 552b, and (2) the related regulation, 33 C.F.R § 209.50, by failing to "provide notice of and access to meetings at which its conducts its business of prosecuting the [Mississippi River and Tributaries Project]."  Compl. [1] at ¶ 56.  The MRC responded with a

---

[1] Government in the Sunshine Act, ch. 409, 90 Stat. 1241 (1976).

Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that neither the MRC nor the meetings described in the Complaint are subject to the Sunshine Act. *See* Motion [11]; Mem. [13].  More specifically, the MRC argued that it does not meet the Act's definition of "agency," and the alleged meetings are not covered by the Act.  [13] at p. 13.[2]

Instead of responding to the Motion to Dismiss [11], Plaintiffs exercised their Rule 15(a)(1)(B) option to amend their complaint within 21 days of service of the Motion [11].  *See* Am. Compl. [15]; *see also* Order [14] (setting briefing schedule pursuant to Fed. R. Civ. P. 15(a)(1)(B)).  In Count One of their First Amended Complaint, Plaintiffs re-allege that Defendant has violated (1) the Sunshine Act, 5 U.S.C. § 552b, and (2) its regulations promulgated pursuant to the Sunshine Act, as found at 33 C.F.R § 209.50.  [15] at ¶¶ 63-75.  In Count Two of the First Amended Complaint, Plaintiffs alternatively allege that the MRC qualifies as an advisory committee under the FACA, 5 U.S.C. § 1001, *et seq.*, that tracks the transparency requirements of the Sunshine Act.  As such, Plaintiffs assert that the MRC has failed to adhere to FACA's statutory scheme for open meetings, notices of meetings, records maintenance, and the specific provisions regarding closure of meetings.  *Id.* at ¶¶ 76-87.  Plaintiffs seek a declaratory judgment, injunctive relief, mandamus relief, and other relief as may be appropriate to require the MRC to remedy its past non-compliance and to comply prospectively with the provisions of the Sunshine Act, FACA, and related regulations.  *Id.* at ¶¶ 63-88.

Thereafter, the Court entered an Order mooting the Motion to Dismiss [11].  *See* Text Only Order (1/3/2025).  The MRC responded to the First Amended Complaint with the present Motion to Dismiss [18].  Echoing its previous arguments, the MRC argues that Count One's Sunshine Act claim should be dismissed pursuant to Rule 12(b)(6) because it is not an "agency" under the Act.

---

[2] When referring to documents filed in the Court's CM/ECF system, the page numbers indicate pagination assigned by CM/ECF.

Additionally, the MRC posits that the meetings at issue do not qualify as Sunshine Act "meetings" because they do not involve the deliberations of a quorum of agency members "where such deliberations determine or result in the joint conduct or disposition of official agency business." 5 U.S.C. § 552b(a)(2).

Turning to Count Two's FACA allegations, the MRC argues that it should be dismissed for lack of subject matter jurisdiction because FACA does not provide a private right of action. *See* Fed. R. Civ. P. 12(b)(1). The MRC further asserts that Plaintiffs are not entitled to relief under the Mandamus Act, 28 U.S.C. § 1361, because Plaintiffs have not made the extraordinary showing required to obtain that form of relief. Defendant argues that FACA does not apply to the MRC because its nature is primarily operational, with only secondary advisory functions. Finally, the MRC argues that even if FACA applies, it would not apply to the meetings at issue because they are largely preparatory, and, under the applicable regulations, preparatory meetings need not comply with FACA. Thus, the MRC concludes that because Plaintiffs have not shown a clear right to relief under FACA, this Court is without jurisdiction to award mandamus relief.

## II.    FACTUAL BACKGROUND

With its enactment of 33 U.S.C. § 641 in 1879, Congress created Defendant Mississippi River Commission ("MRC") to, among other things, conduct surveys and develop "plans to protect the banks of the river, improve navigation of the river, and prevent flooding." *Harrison Cnty., Miss. v. Mississippi River Comm'n*, No. 1:19cv986-LG-RPM, 2021 WL 4164679, at *5 (S.D. Miss. Sept. 13, 2021)(citing 33 U.S.C. § 647). "The MRC is required to submit [its] reports to the Secretary of the Army, who transmits the reports to Congress." *Id.* The MRC is composed of seven commissioners appointed by the President of the United States.[3] 33 U.S.C. § 642. "Three

---

[3] As a part of the Presidential Appointment Efficiency and Streamlining Act, Pub. L. No. 112-166, 126 Stat. 1283 (2012), Congress deleted the Senate confirmation requirement for MRC Commissioners.

members of the MRC are selected from the United States Army Corps of Engineers, one from the

National Ocean Survey and three 'from civil life, two of whom shall be civil engineers.'" *Harrison*

*Cnty.*, 2021 WL 4164679, at \*5.  According to statute,

> Any funds which are appropriated by Congress for improving the Mississippi River
> . . . may be expended, under the direction of the Secretary of the Army, in
> accordance with the plans, specifications, and recommendations of the [MRC], as
> approved by the Chief of Engineers, for levees upon any part of said river . . . in
> such manner as, in their opinion, shall best improve navigation and promote the
> interest of commerce at all stages of the river.

33 U.S.C. § 650.  In the aftermath of the Great Flood of 1927, Congress gave increased

responsibility to the MRC to investigate and make recommendations for flood control in the

Mississippi River Basin as a part of the Mississippi River and Tributaries project, created by the

1928 Flood Control Act.  *See* 33 U.S.C. §§ 702a, 702h.[4]

As required by statute, the MRC holds meetings on government boats during its semiannual

inspection trips on the Mississippi River.  33 U.S.C. § 646.  Otherwise, according to statute, the

MRC's meetings "shall be held at said headquarters and general offices, the times of said meetings

to be fixed by the president of the commission, who shall cause due notice of such meetings to be

given members of the commission and the public." *Id.*

According to the First Amended Complaint, Plaintiff Emmerich is a parent and holding

company which owns 100% of the stock in twenty-two subsidiary companies that publish

---

[4] Section 702h states, in relevant part that:

> The project herein authorized shall be prosecuted by the Mississippi River Commission under the
> direction of the Secretary of the Army and supervision of the Chief of Engineers and subject to
> [certain] provisions . . . of this title. It shall perform such functions and through such agencies as
> they shall designate after consultation and discussion with the president of the commission. For all
> other purposes the existing laws governing the constitution and activities of the commission shall
> remain unchanged. The commission shall make inspection trips of such frequency and duration as
> will enable it to acquire first-hand information as to conditions and problems germane to the matter
> of flood control within the area of its jurisdiction; and on such trips of inspection ample opportunity
> for hearings and suggestions shall be afforded persons affected by or interested in such problems.

newspapers in print and digital forms across Mississippi, Arkansas, and Louisiana. Am. Compl. [15] at ¶¶ 16-22. Emmerich alleges that "[o]pen meetings and governmental transparency are fundamental" to its business. *Id.* at ¶ 18. Emmerich further alleges that flooding of the Mississippi River is a significant story that affects its own properties, as well as that of the residents of and the state of Mississippi, resulting in lost revenues and higher insurance premiums. *Id.* at ¶¶ 19-20. It argues that lack of access to MRC meetings undermines its ability to serve its customers and fulfill its role as a news organization. *Id.* at ¶ 21.

Plaintiff Howard Jones lives in Natchez, Mississippi, and is the principal owner of a lumber company that owns nearly three hundred acres in two locations on the Mississippi River in southwest Mississippi and "manages about 150,000 acres up and down the Mississippi River." *Id.* at ¶¶ 23, 33. Through his business, Jones is "impacted by flooding on the Mississippi batture,[5] to the extent that flooding destroys or damages timber or impacts his ability to harvest timber." *Id.* at ¶ 23.

In this case, Plaintiffs allege that for many years, and at least since 2010, Defendant MRC violated provisions of the Sunshine Act, 5 U.S.C. § 552b, its related regulations at 33 C.F.R § 209.50, and the FACA, 5 U.S.C. § 1001, *et seq.*, by holding secret, non-public meetings. *Id.* at ¶ 8. According to Plaintiffs, the non-public meetings were different from the public forums announced in the Federal Register and on its web site, which were principally used for public

---

[5] The term "batture" "refers to the lands and waters remaining between federal levees or bluffs along the eastern and western banks of the [Mississippi] river. It is what remains of the river's active floodplain. The batture covers approximately 2 million acres between Cairo, Illinois, and Baton Rouge, Louisiana." *See* https://www.lmrcc.org/habitat/the-batture-what-is-it-and-why-is-it-important/ (last visited Apr. 22, 2025) (citing to D.S. Biedenharn, K.J. Killgore, C.D. Little, Jr., C.E. Murphy, and B.A. Kleiss, *Attributes of the Lower Mississippi River Batture*, MRG&P Technical Note No. 4, March 2018 (a report prepared for the MRC by the Mississippi River Geomorphology & Potamology Program, a part of the Engineer Research and Development Center of the U.S. Army Corps of Engineers)). "Downstream of Baton Rouge, the area between levees or high banks averages less than 1 mile wide. Upstream of Baton Rouge, the batture averages 6.5 miles wide and is up to 15 miles wide in some places." *Id.*

5

relations purposes. *Id.* at ¶¶ 30-40. Instead, the MRC does not provide public notice of the non-public meetings, which are utilized for engineering briefings, technical and policy presentations by Corps of Engineer personnel, and other issues related to management of the waterway. *Id.* at ¶¶ 41-55. Public records of topics, agendas, and/or transcripts of these meetings do not exist. *Id.*

Contrary to the MRC's current practice, Plaintiffs allege that from 1977 to 2010, the MRC provided public notices of meetings with identified subject matter related to waterway management, which were labeled as "Sunshine Act Meeting[s]." *Id.* at ¶ 56. However, Plaintiffs allege that since 2010, the public has been, in effect, denied access to MRC meetings in which actual waterway management has been discussed and, in short, nearly all of the MRC's work since 2010 has been done in secret. *Id.* at ¶¶ 56-62. Of chief concern to Plaintiffs is the impact the decisions made by the MRC in these meetings have had on flood control and the resulting damage (both short- and long-term) to Plaintiff Jones's property and other properties. *Id.* at ¶¶ 58-59. And without access to the meetings, Plaintiffs allege that they cannot ascertain the bases and motivations for the MRC's decisions. *Id.* Plaintiffs seek a declaratory judgment, injunctive relief, and other appropriate relief requiring the MRC to comply with the Sunshine Act, its related regulations, and/or FACA, and to remedy its prior alleged non-compliance. *Id.* at ¶ 88.

## III.   DISCUSSION

### A.  Count One – Sunshine Act

#### 1.  Rule 12(b)(6) Legal Standard

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Defendant MRC has moved to dismiss Count One's Sunshine Act claim, *see* 5 U.S.C. § 552b, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010). "To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (punctuation omitted). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This is a "context-specific task that requires the reviewing court to draw on its judicial expertise and common sense." *Id.* at 679.

The Court must "accept all well pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Great Lakes*, 624 F.3d at 210. But the Court will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* Likewise, "a formulaic recitation of the elements of a cause of action will not do." *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417 (5th Cir. 2010)(punctuation omitted. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008)(citing *Twombly*, 550 U.S. at 556). Ultimately, the Court's task "is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012)(citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

7

"The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Ironshore Europe DAC v. Schiff Hardin, LLP*, 912 F.3d 759, 763 (5th Cir. 2019).  The Court may also consider matters of public record, *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995), and any other matters of which it may take judicial notice.  *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

2. <u>Analysis</u>

Plaintiffs allege that MRC has (1) violated the Sunshine Act, and (2) violated the regulations promulgated pursuant to the Sunshine Act, found at 33 C.F.R. § 209.50.  Congress passed the Sunshine Act "to open the deliberations of multi-member federal agencies to public view. It believed that increased openness would enhance citizen confidence in government, encourage higher quality work by government officials, stimulate well-informed public debate about government programs and policies, and promote cooperation between citizens and government." *Common Cause v. Nuclear Reg. Comm'n*, 674 F.2d 921, 928 (D.C. Cir. 1982). Subject to certain exceptions not applicable to this action,[6] Congress mandated that "every portion of every meeting of an agency shall be open to public observation."  5 U.S.C. § 552b(b).  In sum, Congress "sought to make government more fully accountable to the people."  *Common Cause*, 674 F.2d at 928.

Defendant MRC argues that Plaintiffs' First Amended Complaint fails to state a claim

---

[6] Exceptions include, broadly speaking, matters related to national defense and foreign policy, internal personnel rules and practices of an agency, non-discretionary matters, privileged or confidential trade secrets and commercial or financial information obtained from a person, crimes or formal censuring of a person, information of a personal nature where disclosure would be an unwarranted invasion of personal privacy, certain law enforcement investigatory records, information related to regulation and supervision of financial institutions, premature disclosure of information that could lead to significant speculation in the financial markets or endanger the stability of any financial institution, information regarding proposed agency action (with delineated exceptions), and certain legal proceedings.  5 U.S.C. § 552b(c).  The MRC admits in its Memorandum that these exceptions are not applicable here.  [19] at p. 22.

under the Sunshine Act because it is not an "agency" as defined by the Act. The Sunshine Act incorporates the Freedom of Information Act's[7] ("FOIA") definition of an agency and states that an "agency" under the Act "means any agency, as defined in section 552(e)[[8]] of this title, headed by a collegial body composed of two or more individual members, a majority of whom are appointed to such position by the President with the advice and consent of the Senate . . . ." 5 U.S.C. § 552b(a)(1). Likewise, for reasons explained below, it is instructive that FOIA's definition of "agency" has been employed to interpret that term as used in the Administrative Procedure Act ("APA"), 5 U.S.C. § 701(b). *See Soucie v. David*, 448 F.2d 1067, 1073 (D.C. Cir. 1971)(using FOIA's definition of "agency" to find that, for purposes of the APA, the Office of Science and Technology was an "agency.").

That distinction is relevant to the present case because, drawing on *Soucie*'s clarification of the term "agency" as found in FOIA, this Court has previously concluded that "the MRC does not qualify as an 'agency' under 5 U.S.C. § 701(b)(1)" of the APA, and, therefore, could not be sued under the APA. *Harrison Cnty.*, 2021 WL 4164679, at *5.[9] In that case, the Court examined the MRC's work, noting that its "duties include conducting surveys and developing plans to, inter alia, protect the banks of the river, improve navigation of the river, and prevent flooding." *Id.* Explaining its rationale, this Court stated that "[t]he MRC does not have decision-making authority. Instead, it merely provides recommendations for flood control to the Corps [of Engineers]. It does not make binding rules of general application. Ultimately, it is the decisions

---

[7] 5 U.S.C. § 552.

[8] Section 552(e) was subsequently redesignated as 5 U.S.C. § 552(f).

[9] *See also Electronic Privacy*, 466 F. Supp. 3d at 107 (observing that Congress expanded FOIA's definition of agency with 1974 amendments to FOIA "'to encompass entities that might have eluded the APA's definition [of agency] in § 551(1).'")(citations omitted). Thus, the court concluded that Congress "allowed for something to be an 'agency' under § 552(f)(1) [of FOIA] but *not* an 'agency' under § 551(1) or § 701(b)(1) [of the APA]. In other words, because of the 1974 amendment [to FOIA], all APA agencies are FOIA agencies, but not vice-versa." *Id.* (emphasis in original).

of the Corps, which may be based upon recommendations by the MRC, that are reviewable" under the APA.  *Id.*

Likewise, because this Court has previously determined that the MRC is not an "agency" under the APA based on FOIA's definition of the term, it logically follows that it is not an agency under the Sunshine Act, which also uses FOIA to define "agency."  Moreover, its members are no longer subject to Senate confirmation, which is a requirement of an "agency" under the Sunshine Act.  *See* 5 U.S.C. § 552b(a)(1).  Accordingly, the Court hereby grants MRC's Rule 12(b)(6) Motion to Dismiss Plaintiff's claim based on the Sunshine Act itself.

This does not, however, extinguish the portion of Plaintiffs' claim seeking enforcement of the MRC's regulations promulgated pursuant to the Sunshine Act, as found at 33 C.F.R. § 209.50. Am. Compl. [15] at ¶¶ 71-75, 88.  Plaintiffs allege that the "MRC has violated the Sunshine Act and the MRC's own regulations since approximately 2010 by failing to provide notice of and access to meetings at which it conducts its business of prosecuting the MR&T Project."  *Id.* at ¶ 75.  Furthermore, after quoting from 5 U.S.C. § 552b(a)(2) regarding the definitions of "meetings" and "deliberations," Plaintiffs further allege that the "various MRC meetings discussed in this Amended Complaint are all in furtherance of the MRC's disposition of official agency business and subject to the Sunshine Act, as was long understood by the Corps prior to approximately 2010."  *Id.* at ¶ 67.

Based on the deposition testimony of Corps personnel and citing specific types of meetings, Plaintiffs point to four categories of meetings as examples of meetings from which they have been wrongly excluded: (1) detailed engineering briefings by District Commanders, *id.* at ¶¶ 44-47; (2) technical and policy presentations and related presentations by Corps of Engineers Personnel, *id.* at ¶¶ 48-50; (3) information or issues presented by the District Engineer, Corps experts, or other

sources, *id.* at ¶ 51; and (4) the "winter meetings" held at MRC Headquarters in Vicksburg, Mississippi. *Id.* at ¶¶ 53-55. Plaintiffs seek a writ of mandamus to compel the MRC's compliance with 33 C.F.R. § 209.50, thereby providing them access to the foregoing categories of meetings.

Under the Mandamus Act, a district court has "jurisdiction [over] any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "[M]andamus jurisdiction exists if the action is an attempt to compel an officer or employee of the United States or its agencies to perform an allegedly nondiscretionary duty owed to the plaintiff." *Wolcott v. Sebelius*, 635 F.3d 757, 766 (5th Cir. 2011). However, the Court must be mindful to "'avoid tackling the merits under the ruse of assessing jurisdiction.'" *Id.* at 763 (citation omitted).

Section 209.50 incorporates the language of the Sunshine Act and provides that its purpose is to:

> afford to the public, to the fullest possible extent, information regarding the decisionmaking processes of the Mississippi River Commission and to open all meetings of the Mississippi River Commission to public observation except in instances where a portion or portions of a meeting may be closed to the public in accordance with this regulation in order to protect the rights of individuals and/or in order to permit the Mississippi River Commission to carry out its statutory and assigned functions and responsibilities.

33 C.F.R. § 209.50(a)(1)(2025). Under the regulation, a "meeting" is defined as "the deliberations of at least a majority of the Commissioners where such deliberations determine or result in the joint conduct or disposition of official Commission business," with certain exclusions related to deliberations regarding closure of meetings. *Id.* at § 209.50(b)(6).

The MRC does not directly address the continued viability of the regulations. However, in the section of its brief addressing the statute, the MRC labels Plaintiffs' allegations regarding the meetings as "conclusory." *See* Mem. [19] at p. 23. The MRC argues that Plaintiffs have

insufficiently pleaded their claim with regard to the meetings that are subject to the Sunshine Act because the First Amended Complaint does not specifically allege that the meetings included "deliberations" and fails to provide specific facts from the closed meetings.

Although the Court has held that the MRC no longer falls under the Sunshine Act, the regulations promulgated for the MRC pursuant to the Sunshine Act are still in force. "So long as a regulation is extant it has the force of law" and must be followed as written until it is rescinded or amended. *United States v. Nixon*, 418 U.S. 683, 695-696 (1974). "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." *Gulf States Mfrs., Inc. v. N.L.R.B.,* 579 F.2d 1298, 1308–1309 (5th Cir. 1978), *on reh'g,* 598 F.2d 896 (5th Cir. 1979). A regulation "is binding law governing the agency's decisions in this realm and, as long as it is on the books, it must be followed." *Center for Auto Safety v. Dole*, 828 F.2d 799, 803 (D.C. Cir. 1987), *on reh'g*, 846 F.2d 1532 (D.C. Cir. 1988).

Thus, because 33 C.F.R. § 209.50 is still "on the books," it has the force of law, and the MRC is duty-bound to follow it. The MRC's argument that the First Amended Complaint falters because it fails to allege specifically that the meetings at issue include "deliberations" is disingenuous. The First Amended Complaint invoked both 5 U.S.C. § 552b(a)(2) regarding the definitions of "meetings" and "deliberations," as well as the regulation, 29 C.F.R. § 209.50. Plaintiffs alleged that the "MRC has violated the Sunshine Act and the MRC's own regulations since approximately 2010 by failing to provide notice of and access to meetings *at which it conducts its business of prosecuting* the MR&T Project." *Id.* at ¶ 75 (emphasis added). The First Amended Complaint proceeds to set out, in detail, the various categories of meetings from which Plaintiffs have been excluded. However, because Plaintiffs have been excluded from the subject meetings, and *there are no transcripts or records regarding the subject meetings* due to the MRC's

practice of conducting the meetings in private, Plaintiffs are at an obvious disadvantage with regard to their ability to allege specific underlying facts regarding whether "deliberations" occurred at the meetings. This disadvantage can be cured during the course of discovery. *See In re S. Scrap Material Co., LLC*, 541 F.3d at 587 ("This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements.")(citation omitted).

As is well-settled, the Rules only require a "short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Moreover, a complaint needs to plead "only enough facts to state a claim to relief that is plausible on its face" to nudge its claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The First Amended Complaint exceeds those standards with regard to its claim based on 33 C.F.R. § 209.50, and the related non-discretionary duties created by the regulation. Accordingly, because Plaintiff has alleged a "plausible" claim for enforcement of 33 C.F.R. § 209.50, the regulation governing public access to meetings of the MRC, this aspect of Defendant MRC's Motion to Dismiss is denied.

B. Count Two – FACA

1. Rule 12(b)(1) Legal Standard

Defendant MRC has moved to dismiss Plaintiffs' FACA claim under Rule 12(b)(1), arguing that the court lacks jurisdiction over the claim. In this Rule 12(b)(1) facial attack on the complaint, the Court is required "merely to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction." *United States ex rel. Academy Health Ctr., Inc. v. Hyperion Foundation, Inc.*, No. 3:10cv552-CWR-LRA, 2014 WL 3385189, at *40 (S.D. Miss. July 9, 2014). "For purposes of the motion, the allegations in the complaint are taken as true." *Id.* (citation omitted). In so doing, the Court must "'assume the truth of all material factual allegations in the

13

complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Electronic Privacy Info. Ctr. v. National Sec. Comm'n on Artificial Intelligence*, 466 F. Supp. 3d 100, 106 (D.D.C. 2020)(quoting *American Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)). "'A Rule 12(b)(1) motion should be granted only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject matter jurisdiction.'" *Staten v. Harrison Cnty., Miss.*, No. 1:19cv560-KS-RHW, 2020 WL 1644991, at *4 (S.D. Miss. Apr. 2, 2020)(quoting *Davis v. United States*, 597 F.3d 646, 649 (5th Cir. 2009)). Additionally, the Court may take judicial notice of matters of public record. *Id.* (citing *Martinez v. McLane*, 792 F. App'x 282, 284 (5th Cir. 2019)(citing Fed. R. Evid. 201)).

      2.  <u>Analysis</u>

Turning to the statute, indeed, "'FACA does not create a private right of action.'" *America First Legal Found. v. Cardona*, 630 F. Supp. 3d 170, 177 (D.D.C. 2022)(quoting *Freedom Watch, Inc. v. Obama*, 807 F. Supp. 2d 28, 32 (D.D.C. 2011)). Therefore, plaintiffs seeking relief under FACA must bring their claims under another right of action. *Id.* It is common for plaintiffs seeking similar relief to assert a cause of action under the APA, but that avenue is foreclosed because this Court has held, as stated above, that the MPC is not an agency under the APA. *See also id.*

Instead, Plaintiffs seek to employ the Mandamus Act, 28 U.S.C. § 1361, and the Declaratory Judgment Act, 28 U.S.C. § 2201, to bootstrap their FACA claims into existence. Their attempt to use the Declaratory Judgment Act fails, however, as "[i]n general, a count for [relief under the Declaratory Judgment Act] 'is not cognizable as a separate cause of action, but it is more properly included in the [] prayer for relief.'" *Walpin v. Corporation for Nat. and Cmty. Serv.*, 718 F. Supp. 2d 18, 24 (D.D.C. 2010)(alteration in original).

On the other hand, as discussed *supra* in Section III(A)(2), the Mandamus Act "grants

district courts original jurisdiction over 'any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.'" *Baptist Mem'l Hosp. v. Sebelius*, 603 F.3d 57, 62 (D.C. Cir. 2010) (quoting 28 U.S.C. § 1361). "'Mandamus is [often] the only vehicle for FACA claims against an advisory committee itself, 'because an advisory committee is not an agency subject to the APA and FACA provides no private right of action.'" *America First*, 630 F. Supp. 3d at 177 (quoting *NAACP Legal Def. and Educ. Fund v. Barr*, 496 F. Supp. 3d 116, 145 (D.D.C. 2020)).

Accordingly, the Court looks at the requirements of the Mandamus Act. "If a federal official . . . has a clear obligation to perform a duty, the plaintiff has a clear right to relief, and there is no other adequate remedy available to the plaintiff, a court may grant mandamus relief." *Freedom Watch*, 807 F. Supp. 2d at 34 (citations omitted). "[I]f there is no clear and compelling duty under the statute as interpreted, the district court must dismiss the action. To this extent, mandamus jurisdiction under § 1361 merges with the merits[,]" and will be evaluated by whether the claim is sufficiently pled. *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005). Even so, the Fifth Circuit has counseled that district courts should be mindful to "'avoid tackling the merits under the ruse of assessing jurisdiction.'" *Wolcott*, 635 F.3d at 763 (citation omitted).

A bit of background about FACA is in order. "FACA was born of a desire to assess the need for the 'numerous committees, boards, commissions, councils, and similar groups which have been established to advise officers and agencies in the executive branch of the Federal Government.'" *Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 445-446 (1989)(quoting 5 U.S.C. App. 2 § 2(a)[10]). "FACA's requirement that advisory committee meetings be open to the

---

[10] The Appendix has since been repealed and recodified at 5 U.S.C. § 1000, *et seq. See* Pub. L. No. 117-286, § 7, 136 Stat. 4361 (2022). Congress stated that the restatement of the law and its recodification did "not change the meaning or effect of the existing law or impair the precedential value of earlier judicial decisions or other interpretations." *Id.*

public, at issue here, 'facilitate[s] public monitoring of advisory committees, thereby reducing the likelihood that advisory committees can serve as secretive channels for special-interest access to agencies.'" *Holy Cross Neighborhood Ass'n v. Julich*, 106 F. Supp. 2d 876, 881 (E.D. La. 2000) (citations omitted).

> FACA defines "advisory committee," as follows:
>
> [a] committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof (hereafter in this paragraph referred to as "committee") that is established or utilized to obtain advice or recommendations for the President or one or more agencies or officers of the Federal Government and that is –
>
> (i) established by statute or reorganization plan;
>
> (ii) established or utilized by the President; or
>
> (iii) established or utilized by one or more agencies.

5 U.S.C. § 1001(2)(A). An "advisory committee" excludes a committee "that is composed wholly of full-time, or permanent part-time, officers or employees of the Federal Government," as well as committees established by the National Academy of Sciences or the National Academy of Public Administration. 5 U.S.C. § 1001(2)(B). FACA also provides that "the function of advisory committees should be advisory only, and all matters under their consideration should be determined, in accordance with law, by the official, agency, or officer involved." *Id.* at § 1002(b)(6). Likewise, the applicable regulation excludes from FACA "[a]ny committee established to perform primarily operational as opposed to advisory functions. Operational functions are those specifically authorized by statute . . . such as making or implementing Government decisions or policy." 41 C.F.R. § 102-3.40(j). The regulations further provide that a "committee designated as operational may be covered by the Act if it becomes primarily advisory in nature." *Id.*

Applying the statutory definition, it appears that the MRC meets the criteria of a FACA advisory committee. It is a "commission" that was "established or utilized to obtain advice or recommendations" for the Secretary of the Army and that is "established by statute." By statute, Congress tasked it with making "plans, specifications, and recommendations . . . for levees upon any part of" the Mississippi River "in such a manner as, in their opinion, shall best improve navigation and promote the interest of commerce at all stages of the river." 33 U.S.C. § 650. The 1928 Flood Control Act expanded the MRC's responsibilities for acquiring "first-hand information" and making plans for flood control on the Mississippi River, but clarified that its mission remained "unchanged." *See* 33 U.S.C. § 702h ("For all other purposes the existing laws governing the constitution and activities of the commission shall remain unchanged."). As fully explored in *Harrison Cnty.*, it does not make or implement Government decisions or policy. *See* 41 C.F.R. § 401-3.40(j); *Harrison Cnty.*, 2021 WL 4164679, at *5.

Indeed, the MRC's website echoes its statutory mandate, stating that upon its establishment in 1879, "Congress charged the MRC with the mission to develop plans to improve the condition of the Mississippi River, foster navigation, promote commerce, and prevent destructive floods . . . ." https://www.mvd.usace.army.mil/About/Mississippi-River-Commission-MRC/ (last visited Apr. 18, 2025); *see Martinez*, 792 F. App'x at 284 (the Court may take judicial notice of matters of public record). The web site further describes that "[t]oday the MRC . . . provides water resources engineering direction and policy advice to the Administration, Congress, and the Army . . . by overseeing the planning and reporting on the improvements on the Mississippi River." *Id.*

In its initial Motion to Dismiss [13], the MRC emphasized its "lack of decision-making authority" and asserted that it "is instead primarily an advisory body." [13] at p. 13. The MRC likened itself to the Fishery Management Council in *Flaherty v. Ross*, stating that it "conducts

research and prepares plans, reports, and recommendations, but does not implement them." *Id.* (citing *Flaherty v. Ross*, 373 F. Supp. 3d 97, 106 (D.D.C. 2019)).  In *Flaherty*, the court found that despite its "considerable resources to conduct research, issue reports, and develop proposals," the authority to make final decisions on the Fish Management Council's recommendations remained with the Secretary of Commerce, therefore it was not an "agency" under the APA.  The Council was as "an advisory body" "at its core." *Flaherty*, 373 F. Supp. 3d at 106.  Likewise, in *Harrison Cnty.*, the government characterized the MRC as "primarily an advisory body" that "prepares plans and recommendations, but [] does not independently implement them."  *Harrison Cnty.*, Civil Action No. 1:19cv986-LG-RPM, Mem. [17] at p. 15.  The MRC argued that by its structure, function, and mandate, "Congress designed it to be an advisory body." *Id.* at p. 16.  Once again, in that briefing the MRC compared itself to the Fishery Management Council in *Flaherty*.  *Id.* (quoting *Flaherty*, 373 F. Supp. 3d at 106)("[a]t its core, the Council is an advisory body.").

However, in its present motion, the MRC has backpedaled from that position, arguing instead that its duties are "primarily operational" in nature, "with only secondary advisory functions," therefore FACA does not apply to it.  [19] at p. 29.  It bases that position on the provision of FACA that states that "the function of advisory committees should be advisory only, and all matters under their consideration should be determined, in accordance with law, by the official, agency or officer involved."  5 U.S.C. § 1002(b)(6).  The MRC touts its statutory operational mandate to survey and study the river, operate vessels on it to carry out that work, its "prosecution" of the Mississippi River and Tributaries Project pursuant to 33 U.S.C. § 702h, and its inspection trips as evidence that, by statute, it is operational in nature.  In the Court's view, however, the MRC's reading of "advisory" is too restrictive, and the MRC seeks to have it both ways – that is, it seeks to be "advisory" when convenient for its purposes, and "operational" at

other times.

Instead, the MRC's operational responsibilities give rise to or beget its advisory duties.  At the end of the day, and as alleged in the First Amended Complaint, its advisory duties are paramount to its mission and a culmination of its operational duties.  That is, its advisory duties, by statute, form the "core" of its mission.  As this Court has previously found, the MRC "merely provides recommendations for flood control to the Corps [of Engineers]," with the ultimate decision-making power resting in the Corps, as established by statute.  *Harrison Ctny.*, 2021 WL 4164679, at *5.

The MRC also attempts to portray the meetings at issue as "preparatory,"[11] and thus not subject to FACA.  The MRC argues, once again, that these meetings did not involve "deliberations," and, instead, represent information-gathering "preparatory work" excluded from the procedural requirements of the applicable regulations.  41 C.F.R. § 102-3.160(a)(2025).  The MRC makes this argument despite the fact that it admittedly conducted the subject meetings in private, and no transcripts or records of the meetings exist.  In other words, the MRC argues that the Court should accept as truth its factual characterization of the meetings.  However, at this juncture, the allegations in the complaint – not the factual assertions underpinning the arguments of a defendant – are taken as true.  *See Academy Health Ctr.*, 2014 WL 3385189, at *40.

Thus, assuming the truth of Plaintiffs' factual allegations, it appears that they have alleged a "plausible set of facts that establish subject matter jurisdiction."  *Staten*, 2020 WL 1644991, at *4.  Therefore, because the MRC meets the statutory definition of an advisory committee, the

---

[11] The applicable regulations exclude from the notice and open meeting requirements of FACA meetings defined as "preparatory work" at which committee members are "convened solely to gather information, conduct research, or analyze relevant issues and facts in preparation for deliberation by advisory committee members in a public meeting of the advisory committee. . . .  These meetings to conduct preparatory work do not include deliberation among advisory committee members." 41 C.F.R. § 102-3.160(a)(2025).

Court finds that Plaintiffs have sufficiently alleged that the MRC has a duty to adhere to FACA, and thus can proceed with a FACA claim pursuant to the Mandamus Act. Accordingly, Defendant's Motion to Dismiss Plaintiffs' FACA claim pursuant to Rule 12(b)(1) is denied.

### IV.    **CONCLUSION**

Accordingly, for the reasons set forth above, the Motion to Dismiss [18] is granted in part and denied in part. The Motion is granted as to the claim based upon the Sunshine Act, denied as to claim based upon 33 C.F.R. § 209.50, and denied as to the claim based upon FACA.

SO ORDERED AND ADJUDGED, this 28th day of April, 2025.

 /s/ Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE